ABRAHAM, FRUCHTER
 & TWERSKY, LLP
IAN D. BERG
TAKEO A. KELLAR
11622 El Camino Real, Suite 100
San Diego, CA 92130
Tel: (858) 764-2580
Fax: (858) 764-2582

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PYRAMID HOLDINGS, INC., Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> TERRAFORM GLOBAL, INC., SUNEDISON, INC. AHMAD CHATILA, CARLOS DEMONECH ZORNOZA, JEREMY AVENIER, MARIN TUONG, BRIAN WUEBBELS, J.P. MORGAN SECURITIES LLC, BARCLAYS CAPITAL INC., CITIGROUP GLOBAL MARKETS INC., MORGAN STANLEY & CO. LLC, GOLDMAN SACHS & CO., MERRILL LYNCH, PIERCE, FENNER & SMITH INC., DEUTSCHE BANK SECURITIES INC., BTG PACTUAL US CAPITAL LLC, ITAU BBA USA SECURITIES, INC., SMBC NIKKO SECURITIES AMERICA, INC., SG AMERICAS SECURITIES LLC, and KOTAK MAHINDRA, INC., <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT FOR VIOLATION OF THE SECURITIES ACT OF 1933** <br><br> DEMAND FOR JURY TRIAL |

Plaintiff Pyramid Holdings, Inc. ("Plaintiff"), individually and on behalf of all others similarly situated, by its undersigned counsel, alleges the following upon personal knowledge as to itself and its own acts and upon information and belief as to all other matters. Plaintiff's information and belief as to matters other than itself and its own acts are based on: the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by or concerning TerraForm Global, Inc. ("TerraForm" or the "Company") and SunEdison, Inc. ("SunEdison"), as well as securities analysts' reports and advisories about the Company and/or SunEdison, press releases and other public statements issued by the Company and/or SunEdison, and media reports about the Company and/or SunEdison. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE AND SUMMARY OF THE ACTION**

1. This is a federal class action on behalf of purchasers of the common stock of TerraForm that was issued pursuant to and/or was traceable to the Registration Statement (the "Registration Statement") in its July 31, 2015 Initial Public Offering (the "IPO"), and who were damaged thereby. Plaintiff seeks to pursue remedies under the Securities Act of 1933 (the "Securities Act").

2. TerraForm owns and operates "clean power" generation assets in emerging market countries. It is structured as a "YieldCo," which is an entity designed to generate dividends and grow by acquiring these power generation assets from its sponsor. In the instant case, TerraForm was meant to acquire solar, wind, and hydro-power facilities from SunEdison and serve those facilities' long-term customers in power purchase agreements ("PPAs"). The payments due under the PPAs would generate long-term cash flows, which would then be primarily distributed to investors. However, a YieldCo must raise capital in order to finance acquisitions and meet continued growth targets. TerraForm's IPO was one such effort to raise capital.

3. The IPO sold 45 million shares of Class A common stock at $15 per share to raise approximately $675 million. The final prospectus (the "Prospectus") incorporated with the Registration Statement was filed with the SEC on August 4, 2015. In describing TerraForm's

business model and future prospects, the Prospectus explained, *inter alia*, that TerraForm would rapidly conduct asset acquisitions as a result of its priority purchase rights from its sponsor, SunEdison. In particular, TerraForm would enter into a support agreement with SunEdison whereby SunEdison would offer it assets "projected to generate an aggregate of at least $1.4 billion of cash available for distribution during their respective first twelve months of commercial operations."

4. Clearly, TerraForm was heavily dependent upon its sponsor SunEdison for its business model to succeed. However, by the time of the IPO and undisclosed to investors, SunEdison was experiencing massive liquidity and financial setbacks that necessitated abandonment of the YieldCo strategy. Within two months, SunEdison was forced to admit that it did not expect to sell any projects at all to TerraForm through 2016. This included the admission that SunEdison would "pivot to third-party sales" because there was "a disconnect between the value of these underlying assets and what people are willing to pay for them in a YieldCo." In response to these disclosures to the market, the price of TerraForm stock significantly declined.

5. As a result of the false and misleading portrayal of the financial condition of TerraForm's sponsor and the viability of the YieldCo strategy in the Prospectus and Registration Statement, Plaintiff and other purchasers of TerraForm common stock suffered significant losses and damages.

## JURISDICTION AND VENUE

6. The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2) and 77o.

7. This Court has jurisdiction of this action pursuant to Section 22 of the Securities Act, 15 U.S.C. §77v, and 28 U.S.C. §1331.

8. Venue is properly laid in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. §1391(b) and (c). The acts and conduct complained of herein occurred in substantial part in this District.

9. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**PARTIES**

10. Plaintiff Pyramid Holdings, Inc., as set forth in the accompanying certification and incorporated by reference herein, purchased the common stock of TerraForm during the IPO and has been damaged thereby. Plaintiff's certification is attached hereto.

11. Defendant TerraForm is a renewable energy company that owns long-term contracted solar, wind, and hydro-electric power plants. Its stated business objective is to increase its dividend to stockholders by continuing to acquire clean power generation assets that produce high-quality, long-term contracted cash flows, primarily by serving utility and commercial customers with strong credit profiles. TerraForm's portfolio of assets includes projects in China, India, South Africa, Honduras, Costa Rica, Nicaragua, Peru, Brazil, Uruguay, Malaysia and Thailand. The Company conducts business in California, and correspondence from the SEC concerning TerraForm's IPO was sent to the Company through SunEdison in Belmont, California.

12. Defendant SunEdison, together with its consolidated subsidiaries, is a globally diversified developer of wind and solar energy projects. It has developed over 1,300 solar and wind projects in 20 countries. SunEdison sponsored TerraForm's IPO with the stated intent to acquire, finance and operate clean power generation assets through TerraForm. SunEdison maintains headquarters in this District at 600 Clipper Drive, Belmont, California 94002.

13. Together with its subsidiaries, SunEdison owns all of TerraForm's Class B common stock. Each share of Class B common stock entitles SunEdison to 100 votes on all matters presented to stockholders generally. By contrast, each share of TerraForm's Class A common stock, which was offered for sale pursuant to the IPO, entitles its holder to one vote on all matters presented to stockholders generally. This means that immediately following the IPO, holders of Class A common stock collectively held 100% of the economic interests in TerraForm and 1.9% of the voting power in TerraForm. SunEdison held the remaining 98.1% of the voting power in TerraForm. As a result, TerraForm was a company "controlled" by SunEdison for applicable stock exchange rules. As the sponsor of TerraForm's IPO, SunEdison was responsible for the false and misleading statements made in connection with the IPO.

14. Defendant Ahmad Chatila ("Chatila") was the Chairman of TerraForm's board of directors at the time of the IPO, and signed or authorized the signing of the false and misleading Registration Statement. He also serves as the President, Chief Executive Officer, and member of the board of directors for SunEdison, and is based at SunEdison's headquarters in Belmont, California.

15. Defendant Carlos Domenech Zornoza ("Zornoza") was TerraForm's Chief Executive Officer and director at the time of the IPO. He also signed or authorized the signing of the false and misleading Registration Statement. Zornoza has served and continues to serve in various executive capacities at SunEdison and its subsidiaries. Correspondence from the SEC regarding the IPO was sent to Zornoza at SunEdison's Belmont, California headquarters.

16. Defendant Jeremy Avenier ("Avenier") was TerraForm's Chief Financial Officer at the time of the IPO. He signed or authorized the signing of the false and misleading Registration Statement and related documents. He is currently a vice president at SunEdison, based in this District.

17. Defendant Martin Truong ("Truong") was a member of TerraForm's board of directors at the time of the IPO. He has also served at SunEdison's Senior Vice President, General Counsel and Secretary. Truong signed or authorized the signing of the false and misleading Registration Statement and related documents.

18. Defendant Brian Wuebbels ("Wuebbels") was a member of TerraForm's board of directors at the time of the IPO. He has also held the positions of Executive Vice President, Chief Financial Officer, and Chief Administrative Officer at SunEdison. Wuebbels signed or authorized the signing of the false and misleading Registration Statement and related documents.

19. Defendants Chatila, Zornoza, Avenier, Truong and Wuebbels are collectively referred to herein as the "Individual Defendants."

20. The Individual Defendants, as senior executive officers and/or directors of TerraForm and its sponsor SunEdison, were privy to confidential and proprietary information concerning TerraForm and SunEdison, their operations, finances, financial condition and present and future business prospects. They had the power to control the contents of TerraForm's statements to the

4
CLASS ACTION COMPLAINT

SEC and the market. They are strictly liable for the materially untrue and misleading statements in the Registration Statement.

21. Further, by reason their ability to make public statements in the name of TerraForm, and further by SunEdison's status as a "controlling" entity of TerraForm, the Individual Defendants and SunEdison were and are controlling persons, and had the power and influence to cause (and did cause) TerraForm to engage in the conduct complained of herein.

22. Defendants J.P. Morgan Securities LLC ("J.P. Morgan"), Barclays Capital Inc. ("Barclays"), Citigroup Capital Markets, Inc. ("Citigroup"), Morgan Stanley & Co. LLC ("Morgan Stanley"), Goldman Sachs & Co. ("Goldman Sachs"), Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), Deutsche Bank Securities Inc. ("Deutsche Bank"), BTG Pactual US Capital LLC ("BTG"), Itau BBA USA Securities, Inc. ("Itau"), SMBC Nikko Securities America, Inc. ("SMBC Nikko"), SG Americas Securities, LLC ("SG Americas"), Kotak Mahindra Inc. ("Kotak") all served as underwriters for the IPO and all did business within this District in connection with the IPO. Collectively, J.P. Morgan, Barclays, Citigroup, Morgan Stanley, Goldman Sachs, Merrill Lynch, Deutsche Bank, BTG, Itau, SMBC Nikko, SG Americas, and Kotak, shall be referred to herein as the "Underwriter Defendants."

23. The Underwriter Defendants assisted TerraForm in planning the IPO and as such had access to non-public information concerning TerraForm and SunEdison's business and finances. In connection with the IPO, the Underwriter Defendants marketed TerraForm stock to potential investors using materially incorrect or misleading information about the Company, and/or omitted material information required to be disclosed in the Registration Statement and elsewhere. The Underwriter Defendants also caused the Registration Statement to be filed with the SEC and to be declared effective in connection with the IPO. They are liable to Plaintiff and those similarly situated under the Securities Act.

**SUBSTANTIVE ALLEGATIONS**

24. Defendant TerraForm was formed as a YieldCo. YieldCo's have become popular as a means of financing various types of clean energy production around the world. They are dividend growth-oriented public companies, created by a parent company (here, SunEdison), that bundle long-

term contracted operating assets in order to generate predictable cash flows. The parent company acquires assets such as power-generating plants, and then sells those assets and their customer contracts for power purchasing to the YieldCo. The contracts then generate ongoing cash flows which are meant to be distributed to the YieldCo's shareholders in the form of dividends. This investment can be attractive to shareholders because they can expect low-risk returns (or yields) that are projected to increase over time. The capital raised by the parent company through the sale of assets to the YieldCo can then be used to pay off expensive debt or finance new projects at attractive rates. However, in order for a YieldCo to obtain capital to finance its acquisitions from its parent company, it frequently turns to an IPO.

25. TerraForm's IPO followed this model. SunEdison, together with its consolidated subsidiaries, acted as TerraForm's sponsor. As described above, TerraForm would remain majority-owned by SunEdison after the IPO through SunEdison's ownership of all of Terraform's Class B common stock.

26. In the Prospectus, Defendants painted SunEdison as globally-established energy powerhouse with a long track record of completing asset acquisitions. Indeed, SunEdison's robust ability to acquire assets, which assets could then be sold to TerraForm for their contracted long-term revenue streams, was essential to TerraForm's business model. However, the Prospectus failed to disclose SunEdison's precarious financial situation which would significantly hamper its ability to acquire and sell assets to TerraForm. Just two months after the IPO, SunEdison was forced to admit that it would not be selling any energy projects to Terraform in 2016 and was abandoning the YieldCo strategy.

***Materially False and Misleading Statements Contained in the Registration Statement and Prospectus***

27. According to the Prospectus, SunEdison "is the largest globally diversified developer of wind and solar energy projects in the world" having developed "over 1,300 solar and wind projects in 20 countries." The Prospectus further touts that SunEdison had "completed all of the projects on which it has commenced construction, including over 140 projects" in TerraForm's target markets and had "a strong asset development pipeline and acquisition track record, significant

6
CLASS ACTION COMPLAINT

project financing experience and asset management and operational expertise." SunEdison's experience and viability was especially important to TerraForm because SunEdison was to be its primary source of asset acquisitions.

28. The Prospectus sets forth at length how TerraForm would thrive based on its relationship with SunEdison. Specifically, its states that:

- We intend to rapidly expand and diversify our initial portfolio by acquiring…solar, wind and hydro-electric power generation assets located in our initial target markets, which we expect will also have long-term [power purchase agreements] with creditworthy counterparties.

- *We believe that we will be able to rapidly expand our initial portfolio as a result of the significant project acquisition call rights and rights of first offer, or "ROFO rights," that we have with our Sponsor* and the project acquisition call rights and ROFO rights we have and expect to acquire from third-party developers of clean power generation assets. [Emphasis added].

- Immediately prior to the completion of this offering, *we will enter into a project support agreement, or the "Support Agreement" with our Sponsor, which will require our Sponsor o offer us additional qualifying projects from its development pipeline through the fifth anniversary of the completion of this offering that are projected to generate an aggregate of at least $1.4 billion of cash available for distribution* during the first twelve following the qualifying projects' respective commercial operation dates… [Emphasis added].

29. These statements were false and misleading because by the time of the IPO, SunEdison was facing significant capital constraints on its ability to finance new projects for sale to TerraForm. Without new projects to acquire, TerraForm could not obtain anywhere near the level of revenue streams it would require to pay reliable dividends to its investors.

30. The Prospectus also advertised SunEdison's success with another YieldCo that it took public in 2014, its M&A experience, and how such experience would be further beneficial to TerraForm. Specifically, it stated:

- Our Sponsor has significant experience in acquiring, financing and operating clean power generation assets through a publicly listed dividend-oriented company. We will be the second yieldco vehicle to launch with our Sponsor's support. Our Sponsor's subsidiary, TerraForm Power, which owns and operates clean power assets located in the United States and other select jurisdictions, completed its initial public offering in July 2014. *With our Sponsor's support, TerraForm Power has raised approximately $3.9 billion*

> *in acquisition and permanent financing to pursue acquisitions of renewable energy projects totaling 1,703.0 MW as of May 1, 2015. We intend to capitalize on our Sponsor's experience in successfully launching and supporting TerraForm Power.* [Emphasis added].
>
> - During the year ended December 31, 2014, our Sponsor completed 32 corporate and project acquisitions worldwide, which included operating projects with an aggregate capacity of 1.5 GW… *We expect to continue to leverage our Sponsor's significant development expertise, project pipeline and third-party acquisition track record.* For example, we have completed or expect to complete in connection with the closing of this offering or during the remainder of 2015, nine separate acquisitions representing 1.1 GW in the aggregate of projects located across multiple geographies that utilize a variety of renewable energy technologies. [Emphasis added].
>
> - To date, our Sponsor and TerraForm Power have raised an aggregate of $9.4 billion since January 1, 2014, providing them with the capital necessary to acquire projects and development platforms to grow TerraForm Power's portfolio of operational renewable energy projects in mature markets.

31. Again, these statements were misleading because by the time of the IPO, SunEdison was not in the financial condition to continue its acquisition strategy at this rate or replicate what it had done with its other YieldCo, TerraForm Power.

32. In discussing SunEdison's merger and acquisition strategy, the Prospectus also explained that SunEdison would be acquiring hydro-electric development assets from Latin American Power ("LAP") in Peru. Using this example, the Prospectus declared that "we believe our Sponsor's significant acquisition experience and expertise will enable us to expand our portfolio through additional acquisitions of operating projects from unaffiliated third parties in our initial target markets." These statements were false and misleading because they failed to disclose that SunEdison lacked the funding to close this transaction and others like it. As would soon be revealed, SunEdison would fail to make the required upfront payment to purchase the LAP assets.

33. The above statements also run afoul of Item 303 of Regulation S-K (17 C.F.R. §229.3030), which requires disclosure of any known trends, demands, commitments, events or uncertainties that might affect a registrant's liquidity, capital resources, or results of operations in any material way. Because TerraForm was heavily dependent upon SunEdison to effectuate its business model, the precariousness of SunEdison's financial condition and the waning viability of

the YieldCo model were required to be disclosed in the Registration Statement. Defendants failed to disclose and/or failed to cause such facts to be disclosed.

### *The Truth is Disclosed to the Market*

34. On August 6, 2015, two days after the closure of TerraForm's IPO, SunEdison announced troubling second quarter 2015 financial results, reporting a loss of $263 million on $455 million of revenue. It had a net loss of $0.93 per share compared to estimates of a net loss of $0.55 per share. According to its financials, SunEdison's debt now stood at $11 billion, which included debt from several recent multi-billion dollar deals to acquire new wind and solar assets.

35. *The Motley Fool* published an article that day entitled "SunEdison's Losses Become a Red Flag for Investors." The article noted that "[i]n a quarter when its competitors wowed investors with better than expected profits, SunEdison is plunging." It further opined that "these results highlight how tough it's going to be to build a renewable energy powerhouse with nearly $11 billion in debt and negative cash flow from operations. The market is finally starting to realize that this high-profile renewable energy powerhouse may actually be building a house of cards."

36. In response to these disclosures, on August 6, 2015 the price of Terraform's stock fell $2.23 per share from an open of $13.50 to a close of $11.27, representing an almost 17% drop in value.

37. Several follow up articles in *The Motley Fool* on August 24, 2015 and September 27, 2015 entitled "SunEdison's House of Cards Is Starting to Crumble" and "Once a Hedge Fund Favorite, SunEdison Has a Long Climb Out of Its Current Hole" noted that SunEdison "doesn't have the balance sheet to build projects" because it had significantly more debt than uncommitted cash. The latter article, in particular, explained that: "In an act of desperation, SunEdison has created what it calls 'warehouse vehicles' which will house projects until [Terraform or SunEdison's other YieldCo] can buy them." These vehicles would be funded by debt and equity, but, according to the article, "the cost is much higher than SunEdison would like." While equity investors would be guaranteed returns, these "could add up to $112 million in costs to Warehouse 1.0 alone."


38. In response to this information, on August 25, 2015, the price of TerraForm stock dropped from an open of $9.16 to a close of $8.04, a more than 12% loss. On September 28, 2014, the price of TerraForm stock dropped from an open of $7.91 to a close of $7.13, a nearly 10% loss.

39. Additional negative analysis of SunEdison's predicament followed. For example, in a piece from *Zach's Equity Research* dated September 30, 2015, the publisher noted that SunEdison had been on "an acquisition spree since last year." While this move was "once believed to be strategic," it was now "considered ineffective as SunEdison does not have the financial strength to fund the projects." Specifically, according to the article, SunEdison now had debt outstanding of $10.7 billion, nearly double the $5.4 billion it had outstanding a year prior, with a concomitant near-doubling of its interest expenses.

40. The revelations did not stop there. On October 5, 2015, SunEdison filed an 8-K announcing layoffs of 15% of its workforce and restructuring charges of $30 to $40 million for Q3 2015 through Q1 2016. The very next day, the *Wall Street Journal* reported that as its "woes mount[ed]," SunEdison failed to make a required $400 million upfront payment for a roughly $700 million planned acquisition of Latin American Power. According to attorneys for LAP, SunEdison was in breach of its obligations under the deal.

41. The proverbial nail in the coffin for TerraForm stock came on October 7, 2015. That day, SunEdison lowered its 2016 projections and announced that it would not sell any projects to TerraForm or its other YieldCo that year. SunEdison's CEO, Defendant Chatila, announced on a call with analysts that SunEdison would "pivot to third-party sales" because there was "a disconnect between the value of these underlying assets and what people are willing to pay for them in a yieldco." Even worse, Chatila announced that SunEdison planned to reduce expansion plans in Latin America and other emerging markets, which were TerraForm's geographic focus. Chatila explained that SunEdison "de-emphasized countries, consolidated divisions and walked away from things that didn't make sense in the current dislocation in the market." In other words, the project acquisition strategy upon which TerraForm depended to effectuate its business plan would not be carried out.

42. As a result of all these disclosures, the stock of both TerraForm and SunEdison's other YieldCo took a beating. The drop in equity value compounded TerraForm's problems even further, as equity financing would no longer be a reliable basis for the YieldCo to fund acquisitions, whether from SunEdison or elsewhere. Indeed, a *Bloomberg Business* article that day quoted Chatila as announcing that, with the share prices of TerraForm and SunEdison's other YieldCo down, the two YieldCos were no longer in a position to purchase power plants. According to the writer, SunEdison would have to look for outside buyers or instead hold the projects on SunEdison's balance sheet. This was "the latest sign that this model, known as yieldcos, is falling from favor in the renewable energy industry."

## CLASS ACTION ALLEGATIONS

43. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all those who purchased shares of common stock of TerraForm pursuant to and/or traceable to the IPO (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

44. TerraForm sold 45 million shares of common stock in the IPO. The members of the Class are so numerous that joinder of all members is impracticable. The precise number of Class members is unknown to Plaintiff at this time but is believed to be in the thousands. In addition, the names and addresses of the Class members can be ascertained from the books and records of TerraForm or its transfer agent or the underwriters to the IPO. Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

45. Plaintiff's claims are typical of the claims of the other members of the Class because plaintiff and all the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to Defendants. Plaintiff does not have any interests antagonistic to, or in conflict with, the Class.

46. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

47. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

48. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether the Registration Statement issued by defendants to the investing public in connection with the IPO omitted and/or misrepresented material facts about TerraForm and its business; and

(c) the extent of injuries sustained by members of the Class and the appropriate measure of damages.

## COUNT I

**Violations of Section 11 of the Securities Act
Against TerraForm, the Individual Defendants,
and the Underwriter Defendants**

49. Plaintiff repeats and realleges each and every allegation contained above.

50. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

51. Plaintiff acquired common stock of TerraForm pursuant to the Registration Statement.

52. The Registration Statement and the Prospectus incorporated therein were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary

to make the statements made not misleading, and omitted to state material facts required to be stated therein.

53. Specifically, the Registration Statement painted TerraForm's sponsor SunEdison as a highly-reliable future source of power generation asset acquisitions, which acquisitions were essential to TerraForm's business model, when in fact SunEdison was in no financial position to carry out this strategy.

54. TerraForm is the registrant for the IPO. As issuer of the common stock, TerraForm is strictly liable to plaintiff and the Class for the misstatements and omissions.

55. The Individual Defendants each signed the Registration Statement. As such, each is strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate.

56. The Underwriter Defendants each served as underwriters in connection with the IPO. Thus, each is strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate.

57. Neither the Individual Defendants nor the Underwriter Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts necessary to make such statements not misleading.

58. By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

59. By virtue of these violations, Plaintiff and the Class have sustained damages. The value of the common stock of TerraForm has declined substantially subsequent to and due to Defendants' violations.

60. Less than one year has elapsed from the time that Plaintiff discovered the facts upon which this complaint is based to the time that plaintiff filed this Complaint. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this Complaint.

13
CLASS ACTION COMPLAINT

**COUNT II**

**Violations of Section 12(a)(2) of the Securities Act**
**Against All Defendants**

61. Plaintiff repeats and realleges each and every allegation set forth above.

62. This Count is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2), on behalf of the Class.

63. Defendants were sellers and offerors and/or solicitors of purchasers of the common stock offered pursuant to the Registration Statement.

64. As set forth above, the Registration Statement contained untrue statements of material fact, omitted to state other facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein. Defendants' actions of solicitation included preparing the inaccurate and misleading Registration Statement and participating in efforts to market the IPO to investors.

65. Defendants owed to the purchasers of TerraForm common stock, including Plaintiff and the other Class members, the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement and related documents to ensure that such statements were accurate and that they did not contain any misstatement or omission of material fact. Defendants, in the exercise of reasonable care, should have known that the Registration Statement and related documents contained misstatements and omissions of material fact.

66. Plaintiff and the other members of the Class purchased or otherwise acquired TerraForm common stock pursuant and/or traceable to the Registration Statement, and neither Plaintiff nor the other Class members knew, or in the exercise of reasonable diligence could have known, of the untruths, inaccuracies and omissions contained in the Registration Statement.

67. Less than one year has elapsed from the time that Plaintiff discovered the facts upon which this complaint is based to the time that Plaintiff filed this Complaint. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this Complaint.

## COUNT III

### Violations of Section 15 of the Securities Act
### Against the Individual Defendants and SunEdison

68. Plaintiff repeats and realleges each and every allegation contained above.

69. This Count is brought pursuant to Section 15 of the Securities Act against the Individual Defendants and SunEdison.

70. Each of the Individual Defendants was a control person of TerraForm by virtue of his position as a director and/or senior officer of TerraForm. SunEdison was a controlling person of TerraForm by virtue of its ownership interest in the Company. As a result, these Defendants had the power to influence and did influence TerraForm to engage in the conduct complained of herein.

71. Each of the Individual Defendants and SunEdison were culpable participants in the violation of Section 11 of the Securities Act alleged in Count I above, based on their having signed the Registration Statement and/or having otherwise participated in the process which allowed the IPO to be successfully completed. By reason of such wrongful conduct, Plaintiff and the Class suffered damages for which these Defendants are liable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

A. Declaring this action to be a proper class action maintained pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and certifying Plaintiff as Class representative;

B. Awarding Plaintiff and other members of the Class compensatory damages;

C. Awarding Plaintiff and other members of the Class rescission on their §12(a)(2) claims;

D. Awarding Plaintiff and other members of the Class interest and their costs and expenses, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

E. Awarding Plaintiff and other members of the Class such other and further relief as may be just and proper under the circumstances.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED: November 5, 2015

**ABRAHAM, FRUCHTER & TWERSKY, LLP**

       /s/ Ian D. Berg
IAN D. BERG
TAKEO A. KELLAR
11622 El Camino Real, Suite 100
San Diego, CA 92130
Tel: (858) 764-2580
Fax: (858) 764-2582

– and –

JACK G. FRUCHTER
MITCHELL M.Z. TWERSKY
CASSANDRA L. PORSCH
One Penn Plaza, Suite 2805
New York, NY 10119
Tel: (212) 279-5050
Fax: (212) 279-3655

*Attorneys for Plaintiff*

## CERTIFICATION OF PYRAMID HOLDINGS INC.
## IN SUPPORT OF CLASS ACTION COMPLAINT

Pyramid Holdings Inc. ("plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint prepared by counsel in the above-captioned case and has authorized the filing of a similar complaint or to otherwise add my name as a lead plaintiff in these proceedings.

2. Plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. During the proposed Class Period, on July 31, 2015 plaintiff purchased 1,200 shares of TerraForm Global, Inc. at a price of $15.00 per share.

5. In the past three years plaintiff has not served nor sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws.

6. Plaintiff will not accept payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of November, 2015.

_____
PYRAMID HOLDINGS INC.